UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Cause No. 1:23-CR-22-HAB |
| ) | |
| MATTHEW T. FOX, JR. ) | |

**OPINION AND ORDER**

Following a brief foot chase, Defendant was arrested in February 2023 on gun and drug charges. Despite showing clear signs of intoxication, Defendant was interrogated first at a local hospital and later at the Allen County, Indiana, Jail. During those interrogations, he made statements against his penal interest. He now moves to suppress those statements. (ECF No. 35). The Court held a hearing on the motion. (ECF No. 43). Post-hearing briefing is now complete (ECF No. 46-48), and the matter is ready for ruling.

**I.   Background Facts**

Just after midnight on February 19, 2023, Defendant was arrested by Officer Joshua Alexander ("Off. Alexander") of the Fort Wayne Police Department ("FWPD") after a one-quarter-mile foot chase. Defendant was handcuffed and placed in the back of Off. Alexander's police cruiser. Videos of the end of the chase, as well as the subsequent interrogations, were provided to the Court and shown at the hearing.

Defendant is in clear distress in the back of the cruiser. He is slumped over and nearly falls out of the cruiser at one point. Off. Alexander testified that he thought Defendant was just "out of breath," but his statements at the scene show otherwise. After Defendant vomited, Off. Alexander repeatedly asks Defendant if he ate any drugs, fearing that Defendant was "going to OD and die." While Defendant initially denied ingesting drugs, he later told responding paramedics that he

couldn't breathe because he had consumed "a large amount of drugs." Defendant also complained of an injured hand.

Off. Alexander transported Defendant from the scene of the arrest to Lutheran Hospital. There, Off. Alexander interrogated Defendant. Incredibly, Off. Alexander testified that nothing about Defendant's behavior or demeanor led Off. Alexander to believe that Defendant was under the influence of anything. The video tells a very different story.

The interrogation begins after 2:20 a.m. Defendant is shackled, face down, to a hospital bed. His eyes are closed throughout the interrogation, and he barely moves. Off. Alexander does read Defendant his *Miranda* rights, and Defendant does acknowledge those rights, but only after a long pause and with a barely audible "yes." Indeed, most of Defendant's responses are in the form of barely audible and mostly unintelligible, single-syllabic responses and grunts. Many of Defendant's "statements" are Off. Alexander repeating back Defendant's probable responses so that they can be recorded on the body cam.

During the interrogation, Defendant acknowledged having a firearm, identified it by make and model, and stated that he possessed it to protect himself from his fellow drug users. Defendant also admitted to possessing "blues," later identified as fentanyl pills, and crack cocaine. Defendant denied selling drugs. The interrogation ends after Off. Alexander asks Defendant to explain the "drug game," at which point Defendant seemingly falls asleep. Off. Alexander asks Defendant if he is "just going to sleep," to which Defendant responds in slurred speech that he didn't "have anything right now."

After being cleared by hospital staff, Defendant was transported to the Allen County Jail. He was placed into an interview room at 2:43 a.m., where he was interrogated by FWPD Detective

2

Michael Dickey ("Det. Dickey"). Defendant was once again read his *Miranda* rights, to which he responded that he understood "all that." Defendant also signed a *Miranda* waiver form.

While still under the influence of drugs or a lack of sleep, Defendant is far more alert and responsive during this interrogation. Defendant stated that he ran because he saw police lights and he had "all [his] shit," meaning his drugs and gun, on him. He told Det. Dickey that he had 170 to 200 "blues," which he acknowledged were M-30 pills, a street name for fentanyl. Defendant told Det. Dickey his profit margin on each pill. He again identified the gun by make and model, but now also stated that it was loaded.

Defendant also went into some detail about his drug enterprise. He stated that he sold "everything," and could buy "blues" 400 to 500 pills at a time. Defendant was reluctant to give up his supplier for fear of getting "railroaded," but did discuss other individuals involved in drug trafficking. He also told Det. Dickey that he could "go get anything," an apparent attempt to cooperate with a future investigation.

Like Off. Alexander, Det. Dickey downplayed Defendant's state at the hearing. He acknowledged that Defendant appeared "drowsy," but testified that he believed Defendant could understand what was being said to him. By contrast, Det. Dickey testified that he could not interview a second male arrested with Defendant because that individual appeared too intoxicated to communicate intelligently.

## II.     Legal Discussion

Defendant's argument is straightforward: he was too impaired for a valid waiver of his *Miranda* rights. The Court agrees with respect to the statements given to Off. Alexander. It does not with respect to the statements given to Det. Dickey.

Defendant may waive his *Miranda* rights only if that waiver was made "voluntarily, knowingly and intelligently." *Moran v. Burbine*, 475 U.S. 412, 421 (1986). The Seventh Circuit has held that a confession is voluntary if, under all the circumstances, it is the "product of a rational intellect and free will and not the result of physical abuse, psychological intimidation, or deceptive interrogation tactics that have overcome the defendant's free will." *United States v. Dillon*, 150 F.3d 754, 757 (7th Cir. 1998). A finding that the police engaged in coercive activity is an essential predicate to a finding that a suspect's confession was involuntary. *See Colorado v. Connelly*, 479 U.S. 157, 167 (1986). The Court determines whether police coerced a suspect by examining things like "the defendant's age, education, intelligence level, and mental state; the length of the defendant's detention, the nature of the interrogations; the inclusion of advice about constitutional rights; and the use of physical punishment, including deprivation of food or sleep." *United States v. Huerta*, 239 F.3d 865, 871 (7th Cir. 2001). When the interrogating officers should reasonably have known that a suspect was under the influence of drugs or alcohol, "a lesser quantum of coercion may be sufficient to call into question the voluntariness of the confession." *United States v. Haddon*, 927 F.2d 942, 946 (7th Cir. 1991).

With this legal background, the Court finds that Defendant's *Miranda* waiver given to Off. Alexander was not voluntary, knowing, and intelligent. Virtually everything about the scene depicted on Off. Alexander's body camera suggests an involuntary and unknowing waiver. From the very beginning, Defendant appears intoxicated to the Court. He struggles to sit upright in the cruiser. He vomits. His conduct leads Off. Alexander to question Defendant about drugs to make sure Defendant doesn't "OD and die." He tells the paramedics that he can't breathe because of the quantity of drugs he ingested. All this information should have given Off. Alexander reason to suspect that Defendant was under the influence of drugs.

Things only get worse when Defendant arrived at the hospital. Defendant was handcuffed, face down, to a hospital bed. Defendant was immobile, barely opening his eyes. His responses to Off. Alexander were delayed, largely inaudible, and monosyllabic. Off. Alexander was forced to repeat many of his statements to make a record. Off. Alexander's hearing testimony, that there was no indication of intoxication, is not credible.

This is a case where "a lesser quantum of coercion" is necessary to cast doubt on the voluntariness of Defendant's confession to Off. Alexander. The Court questions whether *any* interrogation of Defendant by Off. Alexander was appropriate. There was no emergency. The gun and drugs attributed to Defendant had been recovered. There was no danger to the public. The only thing about the situation that would change over the next 8, 12, or 24 hours was Defendant's sobriety. Given Defendant's apparent levels of incoherence, the Court cannot say that he was capable of an intelligent, voluntary waiver of his *Miranda* rights. *See United States v. Outland*, 73 F.4th 482 487-88 (7th Cir. 2023) ("Assessments of a defendant's coherence are regularly weighted into inquiries into the validity of *Miranda* waivers.").

But regardless of whether any interrogation was appropriate, Off. Alexander's was not. The Court is not as sanguine as the Government about the nature of Off. Alexander's questioning. The Government calls Off. Alexander's questions "largely open-ended," (ECF No. 46 at 13) which is another way of calling them partially leading. And, crucially, they were leading in every important aspect to the current prosecution. Off. Alexander asked Defendant "where the gun was at on [him]," suggesting to Defendant that he had a gun. He asked Defendant to describe the "drug game," implying Defendant's participation in drug trafficking. In all the areas that mattered, Off. Alexander framed his questions in a way to allow a clearly intoxicated Defendant to incriminate himself.

The Court has no similar concerns about Det. Dickey's interrogation. While Defendant still appeared intoxicated, he was far more coherent by the time Det. Dickey interrogated him at the Allen County Jail. Defendant provided details regarding his drug trafficking, including the name and type of drug, as well as the wholesale and retail prices. Defendant spoke of purchase quantities. And, importantly, Defendant attempted to mitigate his criminal exposure by suggesting cooperation. All these factors lead the Court to believe that he was able to knowingly and intelligently waive his *Miranda* rights with Det. Dickey. *See Outland*, 73 F.4th at 488 (affirming finding of *Miranda* waiver where defendant "easily recounted details of complex drug transactions" and demonstrated understanding of his *Miranda* rights).

### III. Conclusion

For these reasons, Defendant's motion to suppress (ECF No. 35) is GRANTED in part and DENIED in part. All statements made to Off. Alexander, and all evidence gathered because of those statements, are suppressed. The motion is denied in all other respects.

SO ORDERED on May 27, 2025.

                                                    s/ *Holly A. Brady*
                                                    CHIEF JUDGE HOLLY A. BRADY
                                                    UNITED STATES DISTRICT COURT