**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

UNITED STATES OF AMERICA

v.                                                    CASE NO. 1:23-CR-22-HAB-ALT

MATTHEW T FOX JR.

## OPINION AND ORDER

Defendant Matthew T. Fox, Jr. ("Fox") pleaded guilty to being a felon in possession of a firearm and possessing a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. 922(g)(1) and 18 U.S.C. 924(c) respectively. (ECF 60, 64). The United States Probation Office has prepared a presentence investigation report ("PSR") in advance of Fox's sentencing. The PSR calculated Fox's adjusted offense level to be 17. (ECF 66, at 10–11). This was reached through a base offense level of 14, two enhancements that added four and two points respectively, and two reductions for accepting responsibility that subtracted three points total. (*Id.*).

Fox now objects to the two-point enhancement under U.S.S.G. § 3C1.2 for "recklessly creat[ing] a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer." (ECF 67). The government argues the enhancement applies because Fox threw his gun on the ground while fleeing from police officers through a parking lot that was near a main road and a motel. (ECF 70). Fox counters that the gun instead fell out of his pants after he slipped and fell; that this happened at midnight in a then unpopulated area; and that Fox's conduct was not so dangerous that the enhancement is warranted. (ECF 71).

For the reasons below, Fox's objection will be SUSTAINED.

## BACKGROUND

The following facts are gleaned from the PSR and body camera footage from Fort Wayne Police Department Officer Nicholas McCurdy ("Officer McCurdy"), which the government submitted at the Court's request. Shortly after midnight on February 19, 2023, Officer McCurdy identified a vehicle in the parking lot of a motel on W. Coliseum Blvd in Fort Wayne and confirmed it was stolen after running the license plates. (ECF 66, ¶ 9). He saw the two occupants of the car walk into the same room on the first floor. (*Id.*).

Shortly thereafter, one of the men walked outside. (*Id.* ¶ 10). Officer McCurdy promptly detained him. (*Id.*). The other man—later identified as Fox—also emerged from the room around the same time. (*Id.*). Upon seeing Officer McCurdy, Fox began to flee despite orders to stop and warnings that he would be tased. (*Id.*). After running around the back corner of the motel, Fox fell onto his right side as he approached a parking lot adjoining an arcade building. (ECF 71, at 2). Fox then got up and continued running. (*Id.*).



(*Id.*).

Mere seconds later, as he continued to flee, a gun came off his person and hit the ground beside him. (ECF 66, ¶ 10). Neither screenshots provided by the parties nor Officer McCurdy's body camera footage show whether the gun was thrown, dropped, or simply fell out of Fox's waistband.





(ECF 71, at 3).

After a chase across the street and behind another set of buildings, Fox was caught and taken into custody. (ECF 66, ¶ 10). When he was apprehended, he was found to be carrying a

3

satchel containing a digital scale, small baggies, burnt foil, fentanyl, cocaine, and methamphetamine. (*Id.* ¶ 11). Fox injured his hand during the pursuit. (*Id.* ¶ 15). Paramedics evaluated his hand at the scene and determined he did not require ambulance transport. (*Id.* ¶ 15). But another officer transported Fox to a hospital to have his hand examined. (*Id.* ¶ 15). Police also recovered the handgun from the parking lot. (*Id.* ¶ 13). The handgun was loaded, but it is unclear whether the gun had a round in the chamber.[1] (*Id.* ¶ 14).

## DISCUSSION

U.S.S.G. § 3C1.2 provides for a two-level enhancement if "the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer." Under the Sentencing Guidelines, a defendant's conduct is "reckless" if they were "aware of the risk created by his conduct and the risk was of such a nature and degree that to disregard that risk constituted a gross deviation from the standard of care that a reasonable person would exercise in such a situation." U.S.S.G. § 2A1.4, comment. (n. 1); *see* U.S.S.G. § 3C1.2, comment. (n. 2) (noting that the definition of "reckless" provided in U.S.S.G. § 2A1.4 applies for the enhancement at issue here). The government bears the burden of proving this enhancement by a preponderance of the evidence. *United States v. Brooks*, 100 F.4th 825, 833 (7th Cir. 2024). And the Court "needs to adopt only a permissible view of the evidence." *United States v. Lard,* 327 F.3d 551, 554 (7th Cir. 2003) (citing *United States v. O'Brien*, 238 F.3d 822, 825 (7th Cir. 2001)).

The Court is not convinced by Fox's arguments that the area was so empty that the risk of injury to a bystander was minimal. At the time his gun hit the ground, Fox was still close to the

---

[1] This point is not raised or argued by the parties in their briefing. If the gun did not have a round in the chamber, that would be relevant to the risk of an accidental discharge from dropping the gun. The parties appear to operate on the presumption that a round was chambered. (ECF 67, 70, 71).

motel. He had no way of knowing whether people were still in the building next to him, even if they were closed at that late hour. He was also only a few feet away from W. Coliseum Blvd, a main road which could have easily had drivers passing by. Other cases applying the § 3C1.2 enhancement have presented more obvious dangers to the public. *See Brooks*, 100 F.4th at 830 (applying the enhancement where the defendant threw a handgun with a modifying "switch" outside an occupied apartment complex in the middle of the day); *United States v. Slaughter*, 386 F.3d 401, 404 (2d Cir. 2004) (per curiam) (holding the enhancement applied to a defendant who threw a loaded handgun in an area where children were playing). But the enhancement has also been applied in situations where the threat to the public was less obvious. *Lard*, 327 F.3d at 553 (upholding the enhancement where a defendant threw a rifle into a briar patch not easily accessible by the public). If Fox's gun discharged upon hitting the ground, someone could have been gravely injured. A member of the public could have also easily picked it up. His arguments about the location are thus unpersuasive.

So too are Fox's arguments about the dangerousness of his gun. Both parties invoke *United States v. Brooks*, 100 F.4th 825 (7th Cir. 2024). Fox contends that the case shows the government must prove the gun was susceptible to discharge should it be dropped. The government argues that it need not prove that, or that the gun was even operable. But the *Brooks* court merely considered the attachment of a "switch" to the defendant's gun to be a relevant factor in assessing the risk. *Id.* at 836. This is because the "switch" made the gun "both highly inaccurate and even more dangerous because it was 'fully automatic.'" *Id.* This does not impose a higher burden on the government to prove the weapon to be uniquely dangerous. Nor does it absolve them of the duty to prove the risk is genuine. Here, the gun was real and loaded. No information has been offered suggesting the firearm was inoperable. That is enough to demonstrate a serious risk.

But Fox's arguments about how the gun ended up on the ground and whether that qualifies as "reckless" conduct are compelling. The government insists Fox threw the gun, while Fox asserts that the gun jarred loose from his waistband when he fell, leading the gun to slide out of his pants as he kept running. Fox's conduct was only reckless if he was "aware of the risk created by his conduct and the risk was of such a nature and degree that to disregard that risk constituted a gross deviation from the standard of care that a reasonable person would exercise in such a situation." U.S.S.G. § 2A1.4. If the government's version of events is accurate, then Fox's conduct would warrant the enhancement. But in the Court's view, Fox's version would not.

The government's argument that Fox's conduct was reckless is premised on him throwing or dropping the gun. Put differently, it requires Fox to have made an intentional, conscious decision. This tracks with him needing to have been "aware of the risk created by his conduct" as the standard for the enhancement requires. *Id.* If Fox dropped the gun inadvertently, he could not have had that awareness. And if he did not have that awareness, the enhancement cannot apply. If the enhancement applied to Fox's version of events, then it would cover nearly every armed suspect fleeing law enforcement. Such conduct is unwise and dangerous. But the Court is not willing to say that it per se "recklessly create[s] a substantial risk of death or serious bodily injury." U.S.S.G. § 3C1.2.

The government bears the burden of proving its version of events by a preponderance of the evidence. The Court finds that it has failed to do so. Officer McCurdy's body camera footage was shaky. It is clear when the gun comes out and lands on the pavement. But the footage is unilluminating as to how Fox's gun wound up on the ground. The isolated still frames provided by the parties are no help either. The gun did not noticeably fling backwards as one would expect

6

if it was thrown. All the footage shows is the gun hitting the ground near Fox as he continued to run from Officer McCurdy.

Further, Fox injured his hand during his attempt to flee. Based on the footage and the PSR, it seems likely that the injury occurred during his fall right before the gun hit the ground in the parking lot. Although neither party clarifies which of Fox's hands got injured, the fall and the injury make Fox's version of events more plausible.

After reviewing the footage, the PSR, and the arguments of the parties, the Court finds that the government has failed to meet its burden to apply the two-level enhancement under U.S.S.G. § 3C1.2.

## CONCLUSION

The Court SUSTAINS Fox's objection (ECF 67). The enhancement under U.S.S.G. § 3C1.2 does not apply. Fox's new adjusted offense level is 15. Sentencing will be scheduled by separate entry.

**SO ORDERED** on May 19, 2026.

s/ *Holly A. Brady*
CHIEF JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT